IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DONNA SULLIVAN,                    *
                                   *
        Plaintiff,                 *
                                   *
vs.                                *        CIVIL ACTION 07-00277-WS-B
                                   *
MICHAEL J. ASTRUE,                 *
Commissioner of                    *
Social Security,                   *
                                   *
        Defendant.                 *

## REPORT AND RECOMMENDATION

Plaintiff Donna Sullivan ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., and 1381 et seq. Oral argument was held on February 27, 2008. Upon careful consideration of the administrative record and the memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED.**

## I.   Procedural History

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income on October 25, 2004. Plaintiff alleges that she has been disabled since October 1, 2003 due to pain and swelling in her legs. (Tr. 71, 75-77, 121-122, 167-168). Plaintiff's applications were denied initially. (Tr. 59-

60, 169-170). She timely filed a Request for Hearing before an Administrative Law Judge. (Tr. 66). On August 14, 2006, Administrative Law Judge Glay Maggard ("ALJ Maggard") held an administrative hearing which was attended by Plaintiff, her representative and a vocational expert. (Tr. 24-49). On September 28, 2006, ALJ Maggard issued an unfavorable decision wherein he concluded that Plaintiff is not disabled. (Tr. 14-23). Plaintiff requested review of the ALJ's decision, and on March 13, 2007, the Appeals Council ("AC") denied her request. Thus, the ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 404.981. (Tr. 5-7). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**II.   Issues on Appeal**

A.   Whether the ALJ erred by failing to give controlling weight to treating source medical opinions.

B.   Whether the ALJ erred by failing to re-contact Plaintiff's treating physicians.

C.   Whether the ALJ erred by failing to inquire of the vocational expert whether her testimony about jobs/occupations conflict with the Dictionary of Occupational Titles, in accordance with Social Security Ruling 00-04p ("SSR 00-04p").

**III.  Factual Background**

Plaintiff was born on September 14, 1955, and was 50 years old at the time of the administrative hearing. (Tr. 24, 75, 167). Plaintiff has a 12th grade education, and past work experience as

2

a cashier and sewing machine operator. (Tr. 30, 41, 98, 122, 124, 127, 130). At the August 14, 2006 administrative hearing, Plaintiff testified that she works 14 hours per week, seven hours on Monday and seven hours on Tuesday as a cashier at Dollar General. (Tr. 27-28). According to Plaintiff, she takes one 15-minute break during her shift so that she can elevate her legs. (Tr. 28). Plaintiff indicated that she switched from full-time to part-time status back in 2004 due to problems with her legs. (Tr. 30). Plaintiff testified that she is able to walk a block, that she can sit approximately 30 minutes without elevating her legs, that she can drive short distances, and that she can cook and care for her own needs although her grandchildren assist her with household chores, and her daughter helps her with the shopping. (Tr. 29, 36, 42, 43). Plaintiff also testified that she has been prescribed Keflex for inflamation in her legs, and that she takes Tylenol for pain. (Tr. 29).

## IV.  <u>Analysis</u>

### A.  <u>Standard of Review</u>

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.

Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[1]   A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.   Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).   The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").   In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.   Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

## B.   Discussion

An individual who applies for Social Security disability benefits must prove his disability.   20 C.F.R. §§ 404.1512, 416.912.   Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

---

[1]This Court's review of the Commissioner's application of legal principles is plenary.   Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

4

result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[2]

In the case sub judice, the ALJ determined that while Plaintiff has the severe impairments of arthritis in the knees and right hip, and lymphedema (legs), they do not meet or medically equal the

---

[2]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4.  (Tr. 19-20).  The ALJ also determined that Plaintiff retains the residual functional capacity ("RFC") to lift and carry objects weighing up to 50 pounds at a time, that she can frequently lift or carry objects weighing up to 25 pounds; that she can stand and walk with normal breaks for a total of about six hours in an eight-hour workday; and that she can sit with normal breaks for a total of six hours in an eight-hour workday.  The ALJ further determined that Plaintiff is precluded from climbing ramps, stairs, ladders, ropes or scoffolds, and from more than occasional crouching. (Tr. 20).  The ALJ concluded that Plaintiff is capable of performing her past relevant work as a sewing machine operator, which is unskilled and performed at the light exertional level, and as a cashier, which is semi-skilled and performed at the light exertional level.  According to the ALJ, these positions do not require the performance of work-related activities precluded by Plaintiff's RFC.  (Tr. 23).

The relevant evidence of record reflects that Eyston A. Hunte, M.D., conducted a physical evaluation of Plaintiff on December 16, 2004, at the request of the Agency.  According to Dr. Hunte's report, Plaintiff reported swelling in both feet and pain from the knees down to her feet on the left, and from her hip to her foot on the right.  Plaintiff also reported she has lymphedema, a condition suffered by several members of her family, and that the edema and

6

pain in her legs have increased over the last several years such that she has been forced to reduce her work hours.  (Tr. 133).

Dr. Hunte noted a normal examination of Plaintiff's cervical spine, upper extremities without edema and 2+ deep tendon reflexes, grip strength of 30 pounds on both sides, and 4-5 muscle strength in flexors and extensors on the right and left.  Plaintiff had no muscle atrophy.  Range of motion in shoulders, elbows, wrists, and fingers was normal.  Plaintiff had 3+ edema in her lower extremities, and there was a skin graft donor site on her left thigh.  Her gait, squat, toe walk, and heel walk were normal, and her muscle strength on left and right was 4.  The range of motion in her hip, knee and ankle was normal, and 3+ edema was noted in her legs, which were tender when palpated.  (Tr. 133-136).

Plaintiff's dorsolumbar spine exam was normal, straight leg raising in the supine position was 50 degrees right and left and in the sitting position was 90 degrees on the left and right.  Dr. Hunte diagnosis was osteoarthritis of the right hip, osteoarthritis on the knees, and chronic leg pain from congenital lymphedema of the legs.  Dr. Hunte observed that Plaintiff was able to dress and undress herself for the exam, was able to get on and off the exam table, and was able to ambulate normally, and reported that she was able to do her daily activities at home.  (Tr. 136).

On December 22, 2004, Robert O. Harris, M.D., an Agency Medical Consultant, completed a Physical Residual Functional Capacity

Assessment in which he opined that Plaintiff can lift/carry 50 pounds occasionally and 25 pounds frequently, and can stand/walk/sit about six hours in an eight-hour workday.  He also opined that Plaintiff can occasionally kneel, crouch and crawl, and that she is restricted from climbing ramps, stairs, ladders, ropes and scaffolds. (Tr. 138-146).

On January 27, 2006, Plaintiff was treated by Sid Crosby, M.D., for right leg edema.  Dr. Crosby noted that Plaintiff's leg had not improved in spite of taking Keflex for one week.  An x-ray showed venous insufficiency with venous reflux.  On physical exam, Dr. Crosby observed that Plaintiff's her right leg was red and warm, with 3+ pitting.  Plaintiff was instructed to rest, and to use compression, elevation, and heat.  She was referred to vascular specialists. (Tr. 159-160, 161).  The notes reflect that a right femoropopliteal venus duplex sonogram was conducted on January 27, 2006, and W.J. Duffin, D.O., observed as follows: "No phlebothrombosis; venous insufficiency with venous reflux demonstrated during augmentation maneuvers." (Tr. 162).

In a letter dated January 31,2006, Rip Pfeiffer, M.D., of Vascular Specialists of Mobile, reported that he had examined Plaintiff for possible cellulitis in the lower extremities.  He observed that there was no documentation of thrombosis, injury or trauma to her lower extremities, and that she was in no acute distress and had normal vital signs.  He reported that her physical

exam was normal except for 2+ edema of both lower extremities.  Dr. Pfeiffer noted no active cellulitis.  He also noted that arrangements were made for venus reflux testing to confirm venous valvular insufficiency, and that arrangements had also be made for Plaintiff to obtain, on a no-cost basis, light-weight surgical stockings.  He instructed Plaintiff to wear the stockings regularly in order to prevent recurrent edema and cellulitis.  (Tr. 154).

The records reflect that Plaintiff was treated by Jared Ellis, M.D., of Family Medical of Jackson, P.C., on February 3, 2006 for venous insufficiency.  He instructed her to treat cellulitis when it occurs.  He also instructed her to rest, and to use hose, compression, elevation and heat for one week.  He observed that there was not much else to do except lose weight.  (Tr. 157).

In a treatment note dated February 15, 2006, Glenn E. Esses, M.D., of Vascular Specialists of Mobile, observed that the venous reflux study indicated severe reflux within the right superficial femoralpopliteal as well as greater saphenous, with similar findings on the left.  His impression was "[b]oth deep and superficial reflux noted." (Tr. 156).  In a chart entry dated February 17, 2006, Dr. Esses noted that Plaintiff had undergone a venous duplex, which showed severe reflux within both deep and superficial systems.  As a result, he opined that Plaintiff is not a candidate for any type of ablation procedure, and that use of lower extremity stocking and treatment for cellulitis is appropriate.  He further noted that

Plaintiff could follow-up with Dr. Pfeiffer. (Tr. 155).

In a treatment note dated March 23, 2006, Dr. Pfeiffer observed that Plaintiff has "obvious venous valvular insufficiency in both the superficial and deep system, although she does not have a lot of evidence of it clinically, and that she still has a lot of trouble with standing as a clerk at the Dollar General Store." He also observed that her cardiopulmonary and abdominal exams were normal, as were femoral, popliteal and pedal pulses. He prescribed stockings, and noted that Plaintiff has to wear stockings every day for the rest of her life. (Tr. 153).

At the request of the Agency, William A. Crotwell, III, M.D., performed a physical examination of Plaintiff on May 15, 2006. (Tr. 148-150). In his report, Dr. Crotwell noted that Plaintiff reported bilateral leg pain that affects her hips, thighs, knees, and calves, and advised him that she has been treated by Dr. Pfeiffer, who said she had vascular insufficiency. Dr. Crotwell also noted that Plaintiff has not had an orthopedic evaluation, no MRI's, no EMG's, no CT scans, and no vascular work-up. (Tr. 148).

On physical exam, Dr. Crotwell observed that Plaintiff's lower extremity toe and heel walk were normal, she stood straight with no scoliosis, forward flexion was 100, extension was 90, reflexes were +2, sensory was slightly decreased over the left lateral calf, motor strength was 5/5, straight leg raise right and left was 90 degrees sitting and lying. She had increased pain with

plantar flexion.  The pain decreased with dorsiflexion, which Dr. Crotwell described as "inconsistent."  Examination of her knees was normal, and examination of her right foot revealed 2+ pulses, 40 degree dorsiflexion, 70 degree of plantar flexion, ligaments were intact, she had a negative Drawer sign, pulses were +2, there were no color changes or temperature changes, and there was 2+ edema up to about mid-calf bilaterally.  Dr. Crotwell further observed  that bilateral hip x-rays, femurs and knees were normal, and bilateral feet, AP, lateral and oblique showed a cavus foot with some mild arthritis.  Dr. Crotwell's diagnosis was history of bilateral leg pain with no evidence on x-ray or exam, and history of vascular insufficiency with no evidence on exam.  (Tr. 148-150).

Dr. Crotwell also completed a Physical Capacities Evaluation dated May 15, 2006. He opined that Plaintiff is capable of sitting/standing/walking two hours at a time, and eight hours total in an entire 24-hour workday.  He also opined that Plaintiff can occasionally lift up to 100 pounds, and can frequently bend, squat, crawl, climb, and reach.  He further opined that Plaintiff can use her feet and hands for repetitive movements, and that she is moderately restricted from unprotected heights.  (Tr. 151).

1. **Whether the ALJ erred by failing to give controlling weight to treating source medical opinions.**

Plaintiff contends that the ALJ erred in relying on the opinions of orthopedist Dr. Crotwell and DDS non-examining

physician Dr. Harris, and in ignoring the diagnosis and findings of her treating physicians, Drs. Pfeiffer, Esses and Crosby.  A review of the ALJ's decision clearly demonstrates that he properly considered all of the medical evidence.  It is well settled that "[t]he opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis." Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991).  See, e.g., Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1159-1160 (11th Cir. 2004); Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); Lewis v. Callahan, 125 F.3d 1436, 1439-1441 (11th Cir. 1997); 20 C.F.R. § 404.1527(d)(2).   "[G]ood cause exists when the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1240-1241 (citing to Lewis, 125 F.3d at 1440).  See also Edwards v. Sullivan, 937 F.2d 580 (11th Cir. 1991) (holding that the ALJ properly discounted a treating physician's report where the physician was unsure of the accuracy of his findings and statements).  If the ALJ disregards or accords less weight to the opinion of a treating physician, the ALJ must clearly articulate his reasons, and the failure to do so is reversible error. MacGregor v. Bowen, 786 F. 2d 1050, 1053 (11th Cir. 1986).

The undersigned notes, as a preliminary matter, that while Plaintiff alleges that she became disabled in 2003 due to venous valvular insufficiency, it does not appear that she sought any medical treatment for this condition until January 2006. Moreover, the record reflects that when Plaintiff did seek treatment for this condition, none of her treating physicians indicated that the condition was disabling, nor did any of them impose any work-related restrictions upon her. As a result, this is not a case in which the ALJ rejected the opinions of the claimant's treating physicians. To the contrary, in this case, the ALJ properly considered the treatment notes of Plaintiff's treating physicians; however, there is simply nothing in their records that suggest that Plaintiff is disabled, let alone anything that addresses her functional capacity. Accordingly, the ALJ did not err in giving controlling weight to the opinions of consultative examining physician Dr. Crotwell, and DDS non-examining Medical Consultant, Dr. Harris, with respect to Plaintiff's functional limitations.

In his decision, the ALJ detailed the medical evidence related to venous valvular insufficiency condition, and observed that:

> Dr. Rip Pfeiffer (vascular specialist) and Dr. Sid Crosby (family practioner) saw the claimant and diagnosed venous valvular insufficiency in both the superficial and deep system, although she did not have a lot of evidence of it clinically. The cardiopulmonary and abdominal examinations were normal. There were normal femoral, popliteal and pedal pulses and scattered varicosities. Dr. Pfeiffer prescribed support stockings and stated that the claimant will have to wear these every day for the rest of her life. Further, Dr. Pfeiffer suggested that

the claimant should elevate her legs when she experiences chronic venous insufficiency. Finally, Dr. Pfeiffer opined that there is nothing further the claimant can do except lose weight.

While the claimant complains of pain and swelling relative to venous insufficiency, she does not take any medication, nor has any medication been prescribed. Her treating physician has not prescribed medication for this condition, and while she experiences some swelling, on clinical exam, she is able to toe and heel walk. Moreover, the evidence reflects that she engages in some household activities as well as working part-time as a cashier and driving to work. The vascular specialist opined that surgery would not benefit the claimant and her treatment is to include wearing support stockings, resting, elevating her legs, when she experiences symptoms of pain and swelling. . .

Finally, the undersigned has also considered the opinion of Dr. Pfeiffer (vascular specialist). Dr. Pfeiffer diagnosed venous insufficiency of the legs and prescribed appropriate treatment (such as support stocking and elevating the legs). However, Dr. Pfeiffer did not give an opinion relative to any work-related restrictions or limitations.

In conclusion, while the claimant does have some pain and swelling from venous valvular insufficiency in both legs, this condition would not appear to preclude all work activity, as noted by the claimant's own activities. . .

(Tr. 22).

The ALJ's decision clearly reflects that he accorded the opinions of Plaintiff's treating physicians the weight they were due. He acknowledged, consistent with the treating physicians' opinion, that Plaintiff suffers from venous insufficiency and discussed the course of treatment prescribed for the condition. He also correctly concluded that none of Plaintiff's treating physicians opined that the

14

condition was disabling, or that Plaintiff experiences any work-related restrictions as a result of the condition. Accordingly, Plaintiff's assertion that the ALJ completely ignored the diagnosis and findings of her treating physicians is without merit.

### 2. <u>Whether the ALJ erred by failing to re-contact Plaintiff's treating physicians</u>.

Plaintiff asserts that the ALJ erred in not ensuring that Dr. Crotwell had the evidence of her vascular "work up." According to Plaintiff, Dr. Crotwell's written evaluation reflects that Plaintiff did not have a vascular "work-up"; however, Doctors Pfeiffer and Esses did in fact arrange for such testing.   Plaintiff argues that given Dr. Crotwell's erroneous statement, the ALJ had a duty to re-contact her physicians so as to ensure that Dr. Crowtwell had the benefit of her vascular "work-up."

A hearing before an ALJ is not an adversarial proceeding" and "the ALJ has a basic obligation to develop a full and fair record." <u>Graham v. Apfel</u>, 129 F. 3d 1420, 1422 (11th Cir. 1997).   Medical sources should be re-contacted when the evidence received from tha source is inadequate to determine whether the claimant is disabled. 20 C.F.R. § 404.1512 (e); § 416.912(e).   Social Security Ruling 96-5p: *Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner* requires the ALJ to make "'every

reasonable effort' to recontact the medical source for clarification of the reasons for the opinion" if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the record."

Based upon a review of the record, the undersigned finds that the duty to re-contact did not arise in this case. First, substantial evidence, including the treatment notes of Plaintiff's treating physicians, supports the ALJ's determination that Plaintiff is not disabled. Additionally, a review of the medical records reflects that while a venuous reflux study conducted in February 2006 indicated "severe reflux within the right superficial femoral-popliteral as well as greater saphenous, with similar findings on the left" (Tr. 156), in Dr. Pfeiffer's treatment notes dated March 23, 2006, he observed that Plaintiff "has obvious venous valvular insufficiency in both the superficial and deep system, *although she does not have a lot of evidence of it clinically*." (Tr. 153). Dr. Pfeiffer prescribed stockings to treat the condition, but did not impose any limitations on Plaintiff's activities.   (Tr. 153).  While Dr. Crotwell incorrectly noted, in his May 2006 written evaluation, "no vascular work-up," he diagnosed Plaintiff with a "history of bilateral leg pain with no evidence on x-ray or exam" and

with "history of vascular insufficiency with no evidence on exam." (Tr. 148-150). Given Dr. Crotwell's diagnosis, it is clear that he was aware of the fact that Plaintiff suffered with and has been treated for vascular insufficiency. The fact that he incorrectly noted "no vascular work-up" is of no moment where such testing did not lead Plaintiff's physicians to place any restrictions on her activities. As noted supra, Dr. Ellis instructed Plaintiff to lose weight, and to elevate her legs, and use compression and heat for one week. (Tr. 157). Dr. Pfeiffer instructed her to wear light-weight surgical grade stockings. (Tr. 154). Given that the medical evidence before the ALJ was sufficient to permit him to determine whether Plaintiff was disabled, no duty to re-contact arose.

> **3.** **Whether the ALJ erred by failing to inquire of the vocational expert whether her testimony about jobs/occupations conflict with the Dictionary of Occupational Titles, in accordance with Social Security Ruling 00-04p ("SSR 00-04p").**

Plaintiff argues that the ALJ did not comply with his obligation under SSR 00-4p to elicit a reasonable explanation for any apparent conflicts between the VE's testimony and the DOT. SSR 00-4p provides that:

> [w]hen there is an apparent unresolved conflict between [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support a determination or a decision about

> whether the claimant is disabled . . . . Neither the
> DOT nor the [vocational expert] evidence automatically
> 'trumps' when there is a conflict. The adjudicator must
> resolve the conflict by determining if the explanation
> given by the [vocational expert] is reasonable and
> provides a basis for relying on the [vocational expert]
> testimony rather than on the DOT information.

SSR 00-4p. In the case at hand, Plaintiff has not alleged,
let alone presented any facts, which suggest the existence
of "an apparent unresolved conflict between (vocational
expert) evidence and the DOT." In the absence of such a
showing, SSR 00-4p is not implicated. Moreover, in this
Circuit, even assuming that an inconsistency existed between
the testimony of the VE and the DOT, testimony of the VE
trumps an inconsistent provision of the DOT. See Jones v.
Apfel, 190 F.3d 1224, 1228-29 (11th Cir. 1999).
Accordingly, Plaintiff's claim must fail.

## V. Conclusion

For the reasons set forth, and upon careful
consideration of the administrative record and memoranda of
the parties, it is **RECOMMENDED** that the decision of the
Commissioner of Social Security, denying Plaintiff's claim
for disability insurance benefits and supplemental security
income, be **AFFIRMED.**

The attached sheet contains important information regarding objections to this Report and Recommendation.

**DONE** this **4th day of September, 2008.**


                    **/s/ SONJA F. BIVINS**
                    **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1.   **<u>Objection</u>**.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.   Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.   <u>See</u> 28 U.S.C. § 636(b)(1)©; <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **<u>Opposing party's response to the objection.</u>**   Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.   Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **Transcript (applicable where proceedings tape recorded)**.
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the
magistrate judge finds that the tapes and original records
in this action are adequate for purposes of review.  Any
party planning to object to this recommendation, but unable
to pay the fee for a transcript, is advised that a judicial
determination that transcription is necessary is required
before the United States will pay the cost of the transcript.

                    /s/SONJA F. BIVINS
                 **UNITED STATES MAGISTRATE JUDGE**